Don-Mark Realty Company and Allstate Insurance Company, Insurance Carrier, Appellants, *v.* John Milovec, Appellee.

Argued November 9, 1973, before Judges CRUMLISH, JR., MENCER and ROGERS, sitting as a panel of three.

*Raymond F. Keisling,* with him *Will & Keisling,* for appellants.

*Alexander J. Pentecost,* for appellee.

OPINION BY JUDGE ROGERS, January 10, 1974:

A referee, the Workmen's Compensation Board[1] and the Court of Common Pleas of Allegheny County all held that the claimant in this case, John Milovec, was entitled to compensation for total disability. The employer has appealed the order of the Court. We must reverse.

That the claimant was injured in his employment is not disputed nor is there any question that he suffered permanent injuries to his right arm which renders him unable to perform all of the duties of his last work as a real estate maintenance man or of his former employment as a coal miner. Nor is it seriously contended that the claimant, whom one medical witness described as being 35 per cent disabled and whose principle limitation is the inability to lift objects weighing more than 20 pounds, is unable to do some work.

---

[1] Now the Workmen's Compensation Appeal Board.

The sole issue is whether the employer sustained its burden to prove that work other than that in which the claimant was engaged when injured was available to him, a duty imposed on it by *Barrett v. Otis Elevator Co.*, 431 Pa. 446, 246 A. 2d 668 (1968). We do not have the benefit of the lower court's thinking because its action is evidenced only by a judge's brief holographic order stating only that the compensation authorities had not capriciously disregarded competent evidence supporting the employer's cause. Our review compels us to the opposite conclusion.

The employer relied for proof of claimant's employability upon the testimony of Dr. Glen U. Cleeton, as industrial psychologist by intensive training and of wide experience, formerly Dean of Industrial Management, Humanities and Social Science of Carnegie-Mellon Institute of Technology and at the time of testifying a consultant for business enterprises in personnel relations, labor relations, job analysis and employment standards. After establishing his familiarity with the claimant's physical condition, education and employment background, Dr. Cleeton stated that there were a number of positions within the claimant's capabilities available in the vicinity of his residence, some of which were types of work the claimant had performed in the past. A portion of his testimony is: "These jobs [work the claimant could do] are available in the area, yes. The area figures for employment, about three per cent unemployment, which means that 97 out of every hundred people who want to work have a job or are on a payroll somewhere. The small eating and drinking establishments are crying for help. The larger ones are not. The hospitals are again—I'll put the quotations around it, 'crying for help.' "

This evidence was not rebutted by the claimant. His witness on this subject was a part-time teacher of psychology who believed, because the only physical work

the claimant then did was cutting his own lawn, that the claimant was qualified only to be a groundskeeper for a cemetery or golf course. He did not know whether or not any such positions were in fact available in the area.

The Board, after ungenerously referring to Dr. Cleeton as a person who "described himself as a consultant regarding personnel relations, labor relations, job analysis and employment standards" correctly observed that Dr. Cleeton testified "that there were many jobs that claimant was capable of performing that are available to him in the area in which he resides." It nevertheless concluded that the employer had not sustained its burden of proving the availability of work upon the following reasoning: "There is no evidence that claimant was offered any job that he was capable of performing and the testimony by *Mr.* Cleeton, at most, only shows that work might, or according to statistics should be available in the labor market in which he resides." (Emphasis supplied.) This statement is not only inconsistent with the record and the Commission's own recital of Dr. Cleeton's testimony, its emphasis on the failure of the employer to prove a job offer, if not an error of law, indicates a view of the law not justified by the cases. As Judge WILKINSON well said in *Matrunics v. Ruffsdale Coal Company, Inc.,* 6 Pa. Commonwealth Ct. 420, 422, 295 A. 2d 629 (1972): "Justice MUSMANNO in Petrone and Justice EAGEN in Barrett made it quite clear that what is required is testimony that positions for which claimant is qualified were available, not that one for which he was qualified had been offered to him and rejected. This would be requiring conclusive proof and this was expressly rejected by Justice EAGEN in Barrett. We make it clear that appellants' testimony that nine positions for which claimant was qualified were available was not conclusive on him. He could testify, if such were the case, either that he had applied

and was rejected or that he was not qualified. If such had been done, then the Referee's and the Board's decision could not be regarded as a capricious disregard of competent testimony. Without it, or any other testimony to explain why these specific positions were not available to claimant, as testified to by appellants' witness, the Referee's and the Board's positions cannot be sustained."

The Board in this case capriciously disregarded evidence of the availability of work suitable to the claimant's condition and we must therefore make the following

ORDER

And now, this 10th day of January, 1974, the order of the court below is reversed; the record is remanded to the Workmen's Compensation Appeal Board for appropriate findings on the extent of partial disability and an order for the payment by the defendants of compensation for partial disability from December 9, 1966, and for the payment of doctor, medical, hospital and other costs, stated with particularity.

Judge CRUMLISH dissents.